ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| ESTRELLA, LLC<br><br>Apelada<br><br>v.<br><br>POWERFY HOME, LLC<br><br>Apelante | **TA2026AP00406** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Guaynabo<br><br>Civil Núm. BY2025CV02403<br><br>Sobre: COBRO DE DINERO |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de mayo de 2026.

Comparece ante nos Powerfy Home, LLC (Powerfy o "parte apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 5 de marzo de 2026. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* instada por Estrella, LLC (Estrella o "parte apelada").

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

## I.

El 13 de mayo de 2025, Estrella presentó una *Demanda* sobre cobro de dinero en contra de Powerfy.[2] Alegó que, proveyó servicios legales a la parte apelante, sin que le pagaran por la prestación de dichos servicios. Por ello, reclamó la cantidad de $38,929.48 adeudados, más

---

[1] Ver Orden Administrativa OATA-2026-044 del 4 de mayo de 2026.
[2] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

intereses legales, costas, gastos y honorarios de abogado.

El 10 de septiembre de 2025, Powerfy, sin someterse a la jurisdicción del tribunal, presentó su *Contestación a la Demanda*.[3] En esencia, negó la mayoría de las alegaciones. No obstante, como parte de sus defensas afirmativas, incluyó la falta de legitimación activa, dado que la corporación no podía auto representarse; falta de jurisdicción, debido a que el emplazamiento había sido contrario a derecho, entre otras.

Luego de varios trámites procesales, el 29 de enero de 2026, la parte apelada presentó una *Moción en Solicitud de Sentencia Sumaria*, apoyada en una declaración jurada de una representante de la corporación y documentos acreditativos de la deuda.[4] En esta, esbozó que no existían controversias de hechos materiales y solicitó se dictara sentencia declarando ha lugar la demanda y ordenando a la parte apelante a pagarle la suma de $38,929.48, más aquellos intereses, gastos y/o penalidades, además de costas, gastos y honorarios de abogado por temeridad.

Por su parte, Powerfy presentó su *Oposición a Solicitud de Sentencia Sumaria*.[5] En síntesis, sostuvo que existía controversia de hechos materiales, puesto que, la mera presentación de facturas administrativas no constituía prueba incontrovertida de que los servicios legales descritos habían sido efectivamente rendidos, ni que el tiempo facturado había sido razonable o autorizado.

---

[3] *Contestación a la Demanda*, entrada núm. 4 en SUMAC.
[4] *Moción en Solicitud de Sentencia Sumaria*, entrada núm. 29 en SUMAC.
[5] *Oposición a Solicitud de Sentencia Sumaria*, entrada núm. 32 en SUMAC.

El 5 de marzo de 2026, el foro primario notificó la *Sentencia* apelada.[6] Mediante esta, concluyó que no existía controversia sobre los hechos del caso y destacó los siguientes hechos incontrovertidos:

1. El pasado 17 de octubre de 2023, Powerfy perfeccionó un "Engagement Agreement" con Estrella, LLC.

2. Mediante el "Engagement Agreement", Powerfy contrató a Estrella, LLC para que le asesorara y representara legalmente en casos y asuntos ante el Departamento de Asuntos del Consumidor (en adelante "DACO").

3. Mediante el "Engagement Agreement", Powerfy acordó pagar a Estrella, LLC por hora por los servicios rendidos, bajo las siguientes tarifas:
   a. Miembros y Líderes de Práctica: $225.000 por hora.
   b. Asociados: $200.00 por hora.
   c. Paralegales: $100.00 por hora.

4. Mediante el "Engagement Agreement", Powerfy acordó pagar a Estrella, LLC todos los costos, desembolsos y gastos adicionales incurridos en el desempeño de los servicios legales prestados a tenor con el "Engagement Agreement perfeccionado".

5. Durante el mes de junio de 2024, Estrella LLC asesoró y representó legalmente a Powerfy en asuntos ante el DACO.

6. Powerfy adeuda a Estrella LLC la cantidad total de $640.70 por concepto de servicios prestados y costos correspondientes al mes de junio de 2024.

7. Durante el mes de julio de 2024, Estrella LLC asesoró y representó legalmente a Powerfy en asuntos y casos ante el DACO.

8. Powerfy adeuda a Estrella LLC la cantidad total de $11,391.18 por concepto de servicios prestados y costos correspondientes al mes de julio de 2024.

9. Durante el mes de agosto de 2024, Estrella, LLC asesoró y representó legalmente a Powerfy en asuntos y casos ante el DACO.

10. Powerfy adeuda a Estrella, LLC la cantidad total de $8,683.61 por concepto de

---

[6] *Sentencia*, entrada núm. 39 en SUMAC.

servicios prestados y costos correspondientes al mes de agosto de 2024.

11. Durante el mes de septiembre de 2024, Estrella, LLC asesoró y representó legalmente a Powerfy en asuntos y casos ante el DACO.

12. Powerfy adeuda a Estrella, LLC la cantidad total de $6,436.91 por concepto de servicios prestados y costos correspondientes al mes de septiembre de 2024.

13. Durante el mes de octubre de 2024, Estrella, LLC asesoró y representó legalmente a Powerfy en asuntos y casos ante el DACO.

14. Powerfy adeuda a Estrella LLC la cantidad total de $11,777.08 por concepto de servicios prestados y costos correspondientes al mes de octubre de 2024.

15. Powerfy adeuda a Estrella, LLC la cantidad total de TREINTA Y OCHO MIL NOVECIENTOS VEITINUEVE DÓLARES CON CUARENTA Y OCHO CENTAVOS ($38,929.48) por concepto de servicios prestados y costos correspondientes a los meses de junio, julio, agosto, septiembre y octubre de 2024.

16. Todas las facturas antes mencionadas fueron enviadas por Estrella, LLC a Powerfy Home LLC mediante correo electrónico.

17. Powerfy Home LLC nunca objetó alguna de las facturas antes mencionadas.

18. Estrella LLC ha realizado un sinnúmero de gestiones de cobro a Powerfy sin éxito alguno hasta el presente. Por ende, la deuda es líquida, vencida y exigible.

19. Powerfy ha sido temeraria.

Así pues, el foro *a quo* declaró *Ha Lugar* la solicitud de sentencia sumaria de Estrella. Consecuentemente, condenó a Powerfy al pago de $38,929.40, costas y $3,000.00 en honorarios de abogado por temeridad.

En desacuerdo, el 20 de marzo de 2026, la parte apelante presentó una solicitud de reconsideración,[7] la cual fue denegada el 24 de marzo de 2026, mediante una *Resolución Interlocutoria* emitida por el foro apelado.[8]

Aun inconforme, el 22 de abril de 2026, Powerfy presentó el recurso de epígrafe y señaló que el foro primario cometió los siguientes errores:

> PRIMER ERROR: Erró el Honorable Tribunal de Primera Instancia al disponer del litigio mediante Sentencia Sumaria a pesar de la existencia de controversias reales sobre hechos materiales, incidiendo al realizar una adjudicación de credibilidad improcedente entre declaraciones juradas encontradas e ignorar la impugnación específica bajo juramento sobre la prestación, ejecución y falta de autorización de los servicios reclamados.

> SEGUNDO ERROR: Erró el Honorable Tribunal de Primera Instancia al fundamentar su dictamen en prueba inadmisible y carente de conocimiento personal, al conferir valor probatorio a una declaración jurada de una "Coordinadora de Contabilidad" para dar por probada la ejecución de labores profesionales legales, en clara violación a la Regla 602 de Evidencia y a la Regla 36.5 de Procedimiento Civil.

> TERCER ERROR: Incidió el Honorable Tribunal de Primera Instancia al resolver el litigio de forma prematura y arbitraria, permitiendo el trámite dispositivo antes del vencimiento del término mandatorio para la producción de prueba documental esencial fijado por el propio Tribunal, e imponiendo indebidamente honorarios por temeridad ante una defensa legítima y fundamentada.

El 24 de abril de 2026, emitimos una *Resolución* mediante la cual le concedimos a la parte apelada el término dispuesto en el Reglamento de este Tribunal, según enmendado, para presentar su alegato.

Así pues, el 21 de mayo de 2026, Estrella presentó su *Alegato en Oposición a Recurso de Apelación*.

---

[7] *Solicitud de Reconsideración al amparo de la Regla 47 de las de Procedimiento Civil*, entrada núm. 38 en SUMAC.
[8] *Resolución Interlocutoria*, entrada núm. 39 en SUMAC.

Contando con la comparecencia de todas las partes, procedemos a atender el recurso de epígrafe. Veamos.

**II.**

**-A-**

El mecanismo de sentencia sumaria, regulado por la Regla 36 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36, le permite al Tribunal disponer de un caso sin celebrar una vista en su fondo. *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021)*; León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. ELA*, 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

La Regla 36.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018). Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto con las declaraciones juradas, si las hubiere, surge que no existe ninguna controversia real sobre los hechos materiales y esenciales del caso, y solo resta por resolver una controversia de estricto derecho. 32 LPRA Ap. V, R. 36.3(e). Véase, además: *León Torres v. Rivera Lebrón*, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra,

pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

De otro lado, la sentencia sumaria resulta improcedente cuando: (1) existen hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).

La parte promovida tiene el deber de refutar los hechos alegados con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón*, supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215. En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de esto proceder en derecho. *León Torres v. Rivera Lebrón*, supra, pág. 43.

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción

procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la manera más favorable a la parte que se opone a esta. *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 721. A tono con este principio, nuestro Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria[,] se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. AAA*, 146 DPR 890, 904 (1998).

En el caso del foro apelativo, debe utilizar los mismos criterios que el tribunal sentenciador para determinar si procede dictar sentencia sumaria, no obstante: (1) solo puede considerar los documentos que se presentaron ante el foro de primera instancia, y (2) solo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338*; Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012).

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100 (2015), indicó que, de entrada, debemos revisar que

tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil. *Íd.*, pág. 118. Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos." *Íd*, pág. 119. Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí. *Íd.*

El mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019). A su vez, hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos,[9] es el precedente de cosa juzgada cuando se opone entre partes debidamente relacionadas. *Vera v. Dr. Bravo,* supra, pág. 335. Por ello, se ha advertido que, antes de resolver una

---

[9] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, SE,* 58 DPR 743, 769 (2003).

controversia por la vía sumaria, el juzgador habrá de ponderar cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley." G*onzález v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

De otra parte, nuestro Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como lo es la intención, los propósitos mentales o la negligencia. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 278 (2021). Sin embargo, también se ha dicho que ello no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales. *Íd*.

**-B-**

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751. En nuestra jurisdicción, se reconoce el principio de la autonomía contractual entre las partes contratantes, la cual concede una amplia libertad de acción a los particulares que desean obligarse. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 995 (2024). Esto les permite a las partes establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios

a las leyes, la moral y el orden público. Artículo 1232 del Código Civil de 2020, *supra*, sec. 9753; *SLG Irizarry v. SLG García*, 155 DPR 713 (2001).

Para que un contrato sea válido, se requiere que concurran tres (3) elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. Artículo 1237 del Código Civil de 2020, *supra*, sec. 9771; *Aponte Valentín v. Pfizer Pharmaceuticals, LLC,* 208 DPR 263, 284 (2021).

Mediante una determinación judicial, se puede declarar la invalidez de un contrato, privando a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial o intrínseco al acto. Artículo 341 del Código Civil de 2020, *supra*, sec. 6311. La invalidez puede invocarse por vía de acción o defensa. *Íd*. Según establece el Artículo 342 del Código Civil de 2020, *supra*, sec. 6312, el negocio jurídico puede ser nulo o anulable; es nulo cuando: (a) si el objeto, la causa o el consentimiento son inexistentes; (b) si el objeto o la causa son ilícitos; (c) si carece de las formalidades exigidas por la ley para su validez; o (d) si es contrario a la ley imperativa, la moral o el orden público. *Íd*. Por otra parte, un negocio jurídico es anulable "si el otorgante tiene incapacidad de obrar, si concurre algún vicio de la voluntad, o si el acto adolece de un defecto de forma no solemne." *Íd*.

La regla general sobre la interpretación de los contratos se fundamenta en que "si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas." Artículo 354 del Código Civil de 2020,

supra, sec. 6342; *Rivera v. Rivera*, 168 DPR 193, 212 (2006); *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

-C-

La concesión de honorarios de abogado está regulada por la Regla 44.1(d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1(d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 192 (2022).

De esta manera, la imposición o concesión de honorarios de abogado no procede en todos los casos. Depende de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado, actuaron con temeridad o frivolidad, o de la existencia de una ley especial que ordene la imposición de los honorarios. *González Ramos v. Pacheco Romero*, 209 DPR 138, 148-149 (2022); *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831, 839-840 (2022). Nuestro Tribunal Supremo expresó que: "[s]in duda, para reclamar honorarios de abogado y los intereses presentencia es imprescindible que se haya actuado con temeridad durante el trámite judicial." *González Ramos v. Pacheco Romero*, supra, pág. 148.

La temeridad se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd.*; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la

administración de la justicia." *Jarra Corp. v. Axxis Corp.,* 155 DPR 764, 779 (2001) citando a *Elba ABM v. UPR*, 125 DPR 294, 329 (1990).

En *Feliciano Polanco v. Feliciano González*, 147 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico estableció unos ejemplos de conducta temeraria, el cual incluye:

> [C]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto.

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. JPH Contractors, Corp.*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *González Ramos v. Pacheco Romero*, supra, págs. 148-149.

Además, la imposición de honorarios de abogado tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es

"la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios." *González Ramos v. Pacheco Romero,* supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que este ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez et al.,* supra, pág. 193; *González Ramos v. Pacheco Romero,* supra, pág. 150. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González*, supra, págs. 729.

Ahora bien, una vez el tribunal determina que se incurrió en temeridad, está obligado a imponer el pago de los honorarios de abogado a favor de la parte que prevaleció en el pleito. *Puerto Rico Fast Ferries, LLC v. Autoridad de Alianzas Público-Privadas*, 213 DPR 103, 115 (2023). No obstante, el tribunal no está obligado a realizar la determinación de temeridad en términos expresos. *González Ramos v. Pacheco Romero*, supra, pág. 148, citando a *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702-703 (1999). El Tribunal Supremo de Puerto Rico ha resuelto que: "[e]n ausencia de una conclusión expresa a esos efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada". *Siaca v. Bahía Beach Resort,* 194 DPR 559, 589 (2016).

### III.

En el caso de autos, en esencia, Powerfy alega que incidió el foro primario al dictar sentencia sumariamente, aun cuando habían hechos materiales en controversia. Sostuvo que, el tribunal actuó con prejuicio al darle más valor a la declaración jurada de la coordinadora de contabilidad y finanzas, quien no tiene el conocimiento personal ni directo de las labores legales que realizaron los abogados. A su vez, señala que erró el foro *a quo* al imponer honorarios por temeridad.

Por su parte, Estrella arguye que la oposición de Powerfy a su sentencia sumaria fue procesalmente deficiente y no creó una controversia genuina de hechos materiales. A su vez, resalta que la declaración jurada de la coordinadora de contabilidad estaba basada en el conocimiento personal y administrativo. En cuanto a las facturas, señala que estas constituían prueba *prima facie* de la deuda bajo la excepción de récords de actividades que se realizan con regularidad, y Powerfy no las controvirtió. Finalmente, esboza que el foro primario no resolvió el litigio de forma prematura, puesto que, el descubrimiento de prueba había concluido el 31 de diciembre de 2025,[10] sin que la parte apelante realizara gestión alguna, por lo que, se justifica la imposición de honorarios por temeridad.

Conforme establece nuestro Tribunal Supremo en el caso *Meléndez González et al. v. M. Cuebas,* supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de

---

[10] Véase, *Resolución*, entrada núm. 19 en SUMAC.

la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. A su vez, exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*.

Por lo anterior, luego de analizar las mociones presentadas, surge que la parte apelada cumplió con los requisitos establecidos en la Regla 36 de Procedimiento Civil, *supra*, particularmente en lo concerniente a enumerar una lista de hechos incontrovertidos, y anejar la documentación que los sostienen. Mientras que, la oposición presentada por Powerfy no cumplió con la Regla 36.3(b) de Procedimiento Civil, *supra*. En lo esencial, no incluyó evidencia documental alguna para impugnar los hechos incontrovertidos presentados por la parte apelada.

Como se sabe, en nuestro ordenamiento jurídico, "meras alegaciones no constituyen prueba". *Bones Cruz v. Registrador*, 194 DPR 852, 858 (2016). Consecuentemente, éstas no son suficientes para sustentar hechos en controversia, pues, la propia Regla 36.3(b) de Procedimiento Civil, *supra*, exige a la parte que se opone a una solicitud de sentencia sumaria lo siguiente: (1) que exponga aquellos hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y (2) que indique aquella prueba que establezca estos hechos.

De esta forma, para sustentar todos los hechos que alegaba no estaban en controversia, la parte apelante estaba obligada a presentar declaraciones juradas o cualquier otro documento admisible en evidencia. No

podía descansar únicamente en alegaciones. Lo anterior, en virtud de la propia Regla 36.3(c) de Procedimiento Civil, *supra*, la cual dispone que:

> Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.

Sin embargo, la falta de cumplimiento con la Reglas de Procedimiento Civil, *supra*, no implica una concesión automática de una solicitud de sentencia sumaria, dado que, la concesión de una solicitud de sentencia sumaria ocurrirá cuando en derecho así proceda.

Cumplido con dicho mandato, debemos evaluar *de novo* los reclamos presentados en el caso de epígrafe a los fines de valorar si efectivamente existen controversias de hechos medulares que impiden resolver por la vía sumaria el pleito, así como para determinar si la aplicación del derecho efectuada por el foro primario fue correcta. Adelantamos, que luego de la revisión del expediente, coincidimos con el foro primario en que no existen hechos en controversia.

En el presente caso, no existe duda de que el 17 de octubre de 2023, las partes de epígrafe otorgaron el "*Engagement Agreement*", mediante el cual Powerfy contrató a Estrella para asesoría y representación legal ante el DACo. Tampoco existe controversia sobre que las acordaron las siguientes tarifas por los servicios rendidos: (a) miembros y líderes de práctica: $225.000 por hora; (b) asociados: $200.00 por hora; y (c)

paralegales: $100.00 por hora. A su vez, surge del expediente que las facturas reclamadas por Estrella fueron enviadas a Powerfy sin recibir una objeción.

Por lo tanto, de un examen independiente de la prueba -no controvertida- surge que la parte apelante incumplió con los términos del contrato, y la deuda está vencida, es líquida y exigible. Consecuentemente, procedía dictar sentencia sumaria y ordenar el pago de las cantidades adeudadas.

Finalmente, nuestro ordenamiento jurídico le confiere al foro primario la facultad para imponer el pago de honorarios de abogado a la parte litigante que obró de forma temeraria o frívola. Regla 44.1(d) de Procedimiento Civil, *supra*; *González Ramos v. Pacheco Romero*, supra, pág. 145. La cuantía de honorarios de abogado concedida no varía en la apelación a menos que esta sea excesiva, exigua o haya constituido un abuso de la discreción del tribunal apelado. *Andamios de PR v. JPH Contractors, Corp.*, supra, pág. 520 (2010).

Por consiguiente, al ser discrecional la facultad de imponer honorarios por temeridad, este tribunal reitera su posición de no intervenir con la apreciación que realizó el foro primario. El comportamiento de la parte apelante movió al Tribunal a tal determinación. Por lo que, dicha sanción es producto del examen de la prueba y del proceder de Powerfy. Consecuentemente, ante la ausencia de una determinación irrazonable y, toda vez que la cuantía de $3,000.00 impuesta no nos parece excesiva, no intervendremos con la decisión del foro de instancia. Así pues, procedemos a confirmar la *Sentencia* apelada.

## IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones